**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Henrry Javier Chirinos Crespo, | No. CV-26-00769-PHX-DJH (JZB) |
| Petitioner, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Respondents.[1] | |

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1).  The Court directed Respondents to show cause why the Petition should not be granted.  (Doc. 4).  Upon review of the briefings, the Court will grant the Petition and order Petitioner's immediate release from custody.

**I.    BACKGROUND.**

Petitioner is a native and citizen of Venezuela.  (Doc. 1 at 2).  Petitioner arrived in the United States in December 2024, and after being briefly detained, paroled into the country pending further immigration proceedings.  (*Id.*).  Petitioner's parole was to run through December 10, 2026.  (*Id.*).  Nevertheless, on April 18, 2025—just four months into his parole term—the Department of Homeland Security (DHS) purported to terminate Petitioner's parole.  (*Id.*).  On August 7, 2025, an immigration judge (IJ) ordered Petitioner removed from the United States, and, the next day, Petitioner was taken into immigration custody.  (*Id.*).  Petitioner timely appealed the IJ's decision to the Board of Immigration

---

[1] The Court will substitute Luis Rosa, Jr. for Respondent Unknown Party (Florence Service Processing Center Warden), Markwayne Mullin for Respondent Kristi Noem, and Todd Blanche for Respondent Pamela Bondi.  Fed. R. Civ. P. 25.

Appeals (BIA); as of today's date, that appeal remains pending. (*Id.*).

## II.    DISCUSSION.

As an initial matter, the Court finds that Respondents have not discharged their obligations under the Court's February 12, 2026 Order to Show Cause (OSC) or 28 U.S.C. § 2243. Title 28, section 2243 provides that when a court directs a respondent to show cause for why a writ pursuant to § 2241 should not be granted, the respondent "shall make a return certifying the true cause of the detention." 28 U.S.C. § 2243. Echoing this statutory directive, the Court's February 12, 2026 OSC directed that "[a]ny response must be supported by documentary evidence including, if applicable, affidavits by individuals with personal knowledge of the factual statements made therein and signed under penalty of perjury." (Doc. 4 at 1). Here, however, Respondents have provided no evidence at all. Accordingly, and at a minimum, they have failed to demonstrate that Petitioner's parole was properly terminated. The Petition can thus be granted on this basis alone. 28 U.S.C. §§ 2241(c)(1), 2243.

In any event, the Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

Petitioner contends that his detention violates his right to due process under the Fifth Amendment. (Doc. 1 at 14-15). Respondents contend that "Petitioner's claim to procedural due process rights must fail because []he is considered legally not to have entered the United States, even though []he is physically present here." (Doc. 9 at 7). Respondents argue that "Petitioner is considered not to have entered the United States,

- 2 -

because [he] presented [himself] for inspection at a port of entry and was found to be inadmissible.  Because of this, the 'entry fiction' doctrine holds that Petitioner is entitled only to those procedures granted by statute because Petitioner is not entitled to procedural due process protections." (*Id*. at 8).

The district court in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-10676-BEM, 2026 WL 521557 (D. Mass. Feb. 25, 2026), recently explained why the "entry fiction" urged by Respondents does not foreclose Petitioner's due process claim as to his present detention.  According to the "entry-fiction doctrine," "aliens who arrive at ports of entry. . . are treated for due process purposes as if stopped at the border and thus ha[ve] only those rights regarding admission that Congress has provided by statute." *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020) (internal quotation marks omitted)).  The district court in *D.V.D.* noted that in cases that provide an exception to the otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted are only those 'regarding admission.'"  *Id.* at *30 (quoting *Thuraissigiam*, 591 U.S. at 140).  "This distinction arises near the very inception of the entry-fiction case law." *Id.*  In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's 'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor."  *Id.* (quoting *Wong Wing*, 163 U.S. at 232-33, 235-38).  The district court noted that although *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238).  The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause."  *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'"  *Id.* (citation omitted).  "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification."  *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)).  "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*."  *Id.* (emphasis in original).  Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[ ] to," the issue of [his] admissibility."  *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)).  Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives her of her liberty interests.  *Id.* (citations omitted).

Indeed, recent cases confirm an immigration detainee released on parole retains a liberty interest in his release and that "liberty interest [does] not expire along with his parole."  *Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . .  That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6 (C.D. Cal.

- 4 -

Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his § 1182 parole); *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *5 (N.D. Cal. Dec. 18, 2025) ("[T]he government's decision to release an individual after having detained him creates 'an implicit promise' that he will be re-detained only if he violates the conditions of his release.  Such conditional release is valuable and must be seen as within the protection of the [Due Process Clause].'"  *Id.* at 482 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (internal citation omitted)); *Ramirez v. Wamsley*, No. 2:25-cv-01723-KKE-TLF, 2025 WL 3288295 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration, stating petitioner's "interest in his freedom is constitutionally protected" and that "the Government exercises discretion in determining whether to grant parole or extend it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest.")

Because Petitioner has a liberty interest in his release, the Court must now determine what procedures are required to overcome that interest.  To do so, the Court applies the three-part *Mathews v. Eldridge* test.  424 U.S. 319 (1976).[2]  Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty

---

[2] Although Petitioner argued that his release is compelled by *Mathews* (*see* Doc. 1 at 9-15), Respondents do not address this argument.

protected by the Due Process Clause.); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)). This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594, at *33 (N.D. Cal. Sep. 12, 2025) (citation omitted). The Court concludes there is a significant risk of erroneous deprivation where a bond or redetermination hearing has not been performed. Therefore, this factor favors Petitioner as well.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal., 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively

burdensome."). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). This factor thus favors Petitioner as well.

The Court therefore finds that the *Mathews* factors weigh in favor of finding that Petitioner was entitled to a hearing before he was re-detained and placed in custody. Accordingly, the Court will direct Respondents to immediately release Petitioner. 8 C.F.R. § 212.5(e)(2)(i); *see also Singh v. Unknown Party*, No. CV-26-00483-PHX-JCH (CDB), 2026 U.S. Dist. LEXIS 61597, at *9 (D. Ariz. Mar. 24, 2026) ("The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy.").

**IT IS ORDERED** that:

(1)    Luis Rosa, Jr., Markwayne Mullin, and Todd Blanche are substituted for Respondents  Unknown Party (Florence Service Processing Center Warden),Kristi Noem, and Pamela Bondi, respectively.

(2)    The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

(3)     Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed before her re-detention.

(4)    Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of Petitioner's release.

(5)    Any request for fees and costs pursuant to 28 U.S.C. § 2412 shall be filed within 30 days of final judgment. *See* 28 U.S.C. § 2412(d)(1)(B); (d)(2)(g).

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

(6)     The Clerk of Court must enter judgment accordingly, and close this case.

Dated this 22nd day of June, 2026.

Honorable Diane J. Humetewa
United States District Judge